UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------X

JOSSY JOSEPH,

                                Plaintiff,

                -against-

KENNETH T. (KEN) CUCCINELLI, Acting
Director, U. S. Citizenship and Immigration
Services, WILLIAM BARR, Attorney General, U. S.
Department of Justice, CHRISTOPHER A. WRAY,
Director of Federal Bureau of Investigation, CHAD
F. WOLF, Acting Secretary, U. S. Department of
Homeland Security Office of the General Counsel,

                           Defendants.

------------------------------------------------------------------X

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED:  11/2/2021

1:20-cv-1315-GHW

<u>MEMORANDUM OPINION
AND ORDER</u>

GREGORY H. WOODS, United States District Judge:

       Plaintiff Jossy Joseph is a United States resident who applied for naturalization with U.S.

Citizenship & Immigration Services ("USCIS") in March 2013.  That application was denied on the

basis that Mr. Joseph had not disclosed a prior marriage in his application.  Claiming that the prior

marriage never occurred, Mr. Joseph appealed USCIS's decision by requesting an agency hearing.

USCIS affirmed its denial, and Mr. Joseph pursued judicial review in this Court.  However, after Mr.

Joseph had filed his petition for judicial review, USCIS reopened his application and asked him to

submit additional evidence regarding his alleged prior marriage.  After considering that evidence,

USCIS reaffirmed its denial.  Mr. Joseph then amended his petition for judicial review.

       USCIS claims that Mr. Joseph has not exhausted his administrative remedies because he did

not appeal its most recent denial by requesting a new agency hearing.  Thus, the Government moves

to dismiss his petition for lack of subject matter jurisdiction under Rule 12(b)(1) of the Federal Rules

of Civil Procedure.  Because Mr. Joseph has not in fact exhausted his administrative remedies, the

Court does not have jurisdiction over his claim.  Accordingly, Defendants' motion to dismiss the petition is granted.

## I.    BACKGROUND

### A.  Facts

In 1993, Mr. Joseph moved to the United States from India on a B-2 visitor visa.  Dkt. No. 37-2 ("Joseph Aff.") at 3.  Sponsored by his current wife, Mariamma Joseph, Mr. Joseph obtained permanent residence in 2006.  Dkt. No. 34-1 ("Form N-400 Denial Letter") at 3.  On March 26, 2013, Mr. Joseph submitted a Form N-400, Application for Naturalization ("Form N-400") to USCIS.  *See id.* at 3.

Mr. Joseph's naturalization application did not disclose any marriages prior to his marriage with Ms. Joseph.  *Id.* at 3.  However, USCIS discovered New York City marriage records that showed that Mr. Joseph had married one Jennet Morris only two days after he was first admitted to the United States in 1993.  *Id.* at 3–4.  USCIS noted that Ms. Morris had filed a Form I-130 petition for residence on Mr. Joseph's behalf ten days after their marriage in 1993.  *Id.* at 3.  Mr. Joseph had also filed a Form I-485 application for permanent residence along with the Form I-130 submitted by Ms. Morris.  *Id.*  Those 1993 petitions were denied after Mr. Joseph and Ms. Morris failed to appear for a scheduled interview.  *Id.*

Because of Mr. Joseph's undisclosed marriage, USCIS denied Mr. Joseph's March 2013 application on March 19, 2014.  *Id.* at 2.  USCIS determined that Mr. Joseph was ineligible for naturalization regardless whether he married Ms. Morris in 1993.  *Id.* at 3–4.  If Mr. Joseph never married Ms. Morris, the agency reasoned, then his 1993 petitions had misrepresented a material fact by claiming that they had been married.  *Id.* at 3–4.  Such a misrepresentation would make Mr. Joseph ineligible for naturalization.  Alternatively, USCIS reasoned that if Mr. Joseph did indeed marry Ms. Morris, then his marriage to his current wife—who he married in 1995—must be invalid

because USCIS did not have any evidence that he ever terminated his marriage to Ms. Morris.  *Id.*

Thus, his Form N-400 was denied.

Mr. Joseph submitted a Form N-336, Request for a Hearing on a Decision in Naturalization

Proceedings ("Form N-336") on April 9, 2014, regarding USCIS's March 2014 Form N-400

decision.  Dkt. No. 34-2 ("Form N-336 Denial Letter") at 1.  USCIS granted Mr. Joseph's request

and conducted a hearing on March 27, 2015.  *Id.* at 4.  At his Form N-336 review hearing, Mr.

Joseph maintained that he had never married anyone other than Ms. Joseph, and therefore that

USCIS should not have denied his naturalization application.  *See id.*  USCIS was unpersuaded, and

based its decision on the same grounds as its Form N-400 denial.  *Id.* at 3–4.  In its letter, the agency

specified that its "decision constituted a final administrative denial," and that Mr. Joseph could

thereafter pursue judicial review of its decision.  *Id.* at 4.  USCIS affirmed its denial on June 25, 2015.

*Id.* at 1.

In February 2020, Mr. Joseph filed a petition for judicial review in this Court.  Dkt. No. 1.

In a letter dated August 12, 2020, USCIS contacted Mr. Joseph to tell him that the agency was

reopening his Form N-400 for "reconsideration and re-adjudication."  Dkt. No. 37-1 ("USCIS

Reopening Letter") at 1.  In the letter, USCIS expressly stated that it was reopening Mr. Joseph's

Form N-400.  *Id.* ("[T]he N-400 is herein reopened on Service Motion . . . .").  The agency requested

additional evidence showing that Mr. Joseph was unaware that Ms. Morris had submitted residence

petitions on his behalf based on their 1993 marriage.  *Id.*  Mr. Joseph responded by submitting an

affidavit and a letter from New York City's Office of the City Clerk.  *See* Joseph Aff., Dkt. No. 37-2;

Dkt. No. 37-3.

In his affidavit, Mr. Joseph again insisted that he had never married Ms. Morris and that he

never knowingly submitted any immigration paperwork that made such claims.  Joseph Aff., Dkt.

No. 37-2, at 3–4.  The letter from New York City's Office of the City Clerk stated that it could not

find any record of a 1993 marriage between Mr. Joseph and Ms. Morris, but that "[i]t is possible that

the marriage record you seek is for a marriage license issued outside of New York City." Dkt. No. 37-3 at 2.

However, in the affidavit, Mr. Joseph admitted to signing the Form I-485 that he submitted in 1993. Joseph Aff., Dkt. No. 37-2, at 4. He claimed that he did not understand what he was signing at the time because he "sp[oke] little English and [was] completely ignorant of United States immigration laws." *Id.* at 3. In Mr. Joseph's telling, shortly after he arrived in the United States his uncle took him to see someone who he cannot remember at a location that he cannot recall to fill out what he then believed was work authorization paperwork: that is how he unwittingly signed the Form I-485 that was submitted. *Id.* Mr. Joseph also claimed that his signature on another immigration form was "clearly forged," *id.*, and suggested that the records detailing his marriage to Ms. Morris might have been "doctored or completely fabricated." *See id.* at 1.

In a letter dated January 6, 2021, USCIS again denied Mr. Joseph's Form N-400 application. Dkt. No. 34-3 ("January Denial Letter") at 3. USCIS was unpersuaded by Mr. Joseph's additional evidence for two principal reasons. First, it determined that the authenticity of the additional evidence could not be determined. *Id.* Second, it found that Mr. Joseph gave false testimony under oath in his September 2013 naturalization interview regarding his marriage to Ms. Morris. *Id.*

The January Denial Letter directed Mr. Joseph to "submit a request for a hearing on Form N-336" if he wanted to challenge the result. *Id.* at 4. He did not do so; instead of filing another Form N-336, Mr. Joseph filed an amended petition with this Court seeking judicial review of his application's denial. Dkt. No. 28.

Mr. Joseph filed his amended petition on February 5, 2021. *See* Dkt. No. 28. Defendants filed a motion to dismiss the amended petition on April 27, 2021. *See* Dkt. No. 33 ("Mot. to Dismiss"). Mr. Joseph thereafter submitted his opposition brief on June 1, 2021. *See* Dkt. No. 36 "Opp'n"). Defendants submitted a reply brief on June 8, 2021. *See* Dkt. No. 37.

## II.     LEGAL STANDARD

When applying for naturalization, an applicant must complete five administrative stages. First, naturalization applicants must "submit[] completed application materials to USCIS, including Form N-400." *Saleh v. Pastore*, No. 19 CIV. 11799, 2021 WL 1640449, at *5 (S.D.N.Y. Apr. 27, 2021); *see also* 8 U.S.C. § 1445(a); 8 C.F.R. §§ 316.4, 334.1.  Second, the applicant undergoes a background check.  *See* 8 U.S.C. § 1446(a); 8 C.F.R. §§ 335.1, 335.2(b).  Third, the applicant is tested on his "understanding of the English language" and his "knowledge and understanding of the fundamentals of the history, and of the principles and form of government, of the United States."  8 U.S.C. § 1423(a); *see also* 8 CFR § 312.2.  Fourth, a USCIS officer examines the applicant under oath. *See* 8 C.F.R. §§ 335.2, 335.3.  Finally, if the applicant is approved for naturalization, he must then swear an oath of allegiance at a public ceremony.  *See* 8 U.S.C. § 1448.

If, at the first stage, an applicant's naturalization application is denied, the applicant can request a hearing by submitting Form N-336.  *See Saleh*, 2021 WL 1640449, at *5; *Mitu v. Sessions*, No. 16 CIV. 5876, 2018 WL 456290, at *6 (S.D.N.Y. Jan. 17, 2018); *see also* 8 U.S.C. § 1447(a); 8 C.F.R. §§ 316.14, 336.1, 336.2.  "This hearing serves as an administrative appeal of USCIS's initial determination, and it is conducted by an independent naturalization officer." *Saleh*, 2021 WL 1640449, at *5.  If USCIS confirms the denial of the application for naturalization after that hearing, the applicant may seek judicial review of that denial in a federal district court. *Id.* at *6 (citing 8 U.S.C. § 1421(c)).

"Section 1421(c) . . . requires the exhaustion of administrative remedies."  *Escaler v. U.S. Citizenship & Immigr. Servs.*, 582 F.3d 288, 292 (2d Cir. 2009).  According to Section 1421(c), "[a] person whose application for naturalization . . . is denied, after a hearing before an immigration officer under section 1447(a) of this title, may seek review of such denial before the United States district court . . . ."  8 U.S.C. § 1421(c).  "Where, as here, exhaustion of administrative remedies is required by statute, exhaustion is jurisdictional and must be enforced."  *Baez-Fernandez v. Immigr. &*

*Naturalization Serv.*, 385 F. Supp. 2d 292, 294 (S.D.N.Y. 2005).  Thus, courts lack jurisdiction to review a naturalization application pursuant to § 1421(c) where an applicant has not submitted a Form N-336 to request a hearing on a decision.  *See id.* at 294 ("The Court lacks jurisdiction to review [plaintiff's] first naturalization application because he did not exhaust his administrative remedies by requesting a hearing before an immigration officer . . . ."); *see also Moya v. U.S. Dep't of Homeland Sec.*, 975 F.3d 120, 127 (2d Cir. 2020) ("Section 1421(c)'s exhaustion requirement is 'mandatory,' and . . . Plaintiffs may not sue until they have satisfied it.").

### III.   DISCUSSION

#### A.  The Court Lacks Jurisdiction to Consider Mr. Joseph's Application Because He Did Not Exhaust His Administrative Remedies

Because Mr. Joseph did not file a Form N-336 following USCIS's latest denial of his Form N-400, he has not exhausted his administrative remedies and the Court lacks jurisdiction to consider his petition.  USCIS reopened Mr. Joseph's Form N-400 and reached a new decision on his application.  That triggered the requirement that Mr. Joseph submit Form N-336 before seeking judicial review.  *See Santamaria v. Holder*, No. 11 Civ. 1267, 2012 WL 566073, at *6–7 (S.D.N.Y. Feb. 21, 2012) (stating that naturalization applicants must seek hearings on USCIS decisions before seeking judicial review), *report and recommendation adopted by* 2012 WL 892180 (S.D.N.Y. Mar. 14, 2012); *Baez-Fernandez*, 385 F. Supp. 2d at 294–96 (concluding that an applicant who did not exhaust his administrative remedies could not pursue judicial review); *Neris-Maria v. Quarantillo*, No. 09 Civ. 625, 2011 WL 1338267, at *2 (S.D.N.Y. Apr. 6, 2011) (concluding that an applicant who did not request a Form-336 hearing did not exhaust his administrative remedies).  And there is no dispute that, upon the denial of his reopened Form N-400, Mr. Joseph did not file a Form N-336 to request a new hearing.

In arguing that he was not required to file another Form N-336 following USCIS's January 2021 denial, Mr. Joseph overlooks that USCIS considered new, previously unavailable evidence in

denying his reopened petition.  Specifically, Mr. Joseph submitted supplementary evidence—an

affidavit and a marriage record request—after the Form N-400 was reopened.  *See* Dkt. No. 37-2 at

2; Joseph Aff., Dkt. No. 37-2, at 3–4; Dkt. No. 36 at 10.  USCIS expressly considered that evidence

in its January 2021 denial of the reopened Form N-400.  *See* January Denial Letter, Dkt. No. 34-3, at

3–4.  In effect, it issued a new decision based on those new evidentiary grounds.  Thus, in order to

request a hearing and an appeal of that denial—effectively, an appeal of USCIS's consideration of

that new evidence—Mr. Joseph was required to submit another Form N-336.  By failing to do so,

Mr. Joseph did not exhaust his remedies, and the Court lacks jurisdiction to consider his claims.  *See*

*Gallardo v. Wolf*, No. 20-cv-529-MSS-JSS, 2021 WL 2828931, at *2–3 (M.D. Fla. Jan. 20, 2021)

(holding that plaintiff whose untimely Form N-336 reopened his Form N-400 must file another

Form N-336 after his Form N-400 had been denied for a second time before he could pursue

judicial review).

Mr. Joseph also argues that USCIS did not, in fact, reopen his N-400, but instead reopened

"the review that is triggered by the filing of an N-336."  Opp'n, Dkt. No. 36, at 3.  However, Mr.

Joseph cannot plausibly contend that he did not have adequate notice that his Form N-400 had been

reopened.  In its letter reopening his Form N-400, USCIS expressly stated it "ha[d] been informed

that [he] may be able to produce additional evidence in support of [his] application

[and] . . . [t]herefore, *the N-400 is herein reopened*."  USCIS Reopening Letter, Dkt. No. 37-1, at 1

(emphasis added).  Furthermore, when Mr. Joseph submitted new evidence, he asked USCIS to

"*treat the N-400* as amended to reflect" the statements in his affidavit.  Joseph Aff., Dkt. No. 37-2, at

4 (emphasis added).

Mr. Joseph alternatively argues that "fil[ing] yet another N-336" would not serve any "valid

purpose" because USCIS denied his reopened Form N-400 "on grounds virtually identical" to those

cited in the previous Form N-400 rejection.  *See* Opp'n, Dkt. No. 36, at 3–4.  However, as Mr.

Joseph himself acknowledges, exhausting administrative remedies is a jurisdictional requirement.  *Id.*

at 2 ("Plaintiff concedes the jurisdictional nature of the N-336."). Because "no equitable considerations can empower a court to hear a claim over which it lacks jurisdiction," *Donnelly v. Controlled Application Rev. & Resol. Program Unit*, 503 F. Supp. 3d 100, 104 (S.D.N.Y. 2020), the Court cannot entertain this argument. "When, as here, the exhaustion requirement is established by statute . . . the requirement is 'mandatory, and courts are not free to dispense with [it].'" *Escaler*, 582 F.3d at 292 (quoting *Bastek v. Fed. Crop Ins. Corp.*, 145 F.3d 90, 94 (2d Cir. 1998)); *see Baez-Fernandez*, 385 F. Supp. 2d at 294. USCIS reached a new decision on Mr. Joseph's reopened Form N-400 naturalization application, and therefore Mr. Joseph must pursue a hearing by filing another Form N-336 before seeking judicial review.

## IV.    CONCLUSION

For the reasons described above, Defendants' motion to dismiss the amended petition is GRANTED. The Clerk of Court is directed to enter judgment in favor of Defendants, terminate all outstanding motions, and close this case.

SO ORDERED.

Dated: November 2, 2021  
New York, New York

_____  
GREGORY H. WOODS  
United States District Judge